77 N.J. Super. 348 (1962)
186 A.2d 510
JOSEPH SPIOTTA, PLAINTIFF-APPELLANT,
v.
HARVEY J.E. MILKON, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1962.
Decided December 13, 1962.
*349 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Alan V. Lowenstein argued the cause for appellant (Messrs. Lowenstein and Spicer, attorneys; Mr. Murry D. Brochin, on the brief).
*350 Mr. Walter H. Jones argued the cause pro se, and for respondents Harvey J.E. Milkon, John R. Kraycir and William Sciacca (Mr. Frederick L. Bernstein, of counsel).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff filed suit seeking specific performance of an escrow agreement. The trial court, after hearing all of the evidence, ruled that the agreement "was too indefinite and uncertain" to be enforceable and entered judgment dismissing the complaint. The opinion of the trial court is reported, 70 N.J. Super. 344 (Ch. Div. 1961). Plaintiff appeals.
It is unnecessary to set out the terms of the escrow agreement and the evidence presented at the trial. They are adequately detailed in the trial court's opinion. Suffice it to note that plaintiff and the individual defendants are the controlling stockholders of The City National Bank and Trust Company of Hackensack owning in the aggregate about 80% of the outstanding stock. No one of the parties owns a majority stock interest. However, the individual defendants together control more than 51% of the stock.
Differences arose between plaintiff on the one hand, and defendants on the other, over management of the bank and bank policy. Also plaintiff's acquisition of some 5,292 shares of bank stock from one Shapiro resulted in defendants Milkon and Sciacca filing suit against plaintiff in the Superior Court, Chancery Division. There is no substantial dispute that the situation between plaintiff and the individual defendants deteriorated to a point where a continuance of the relationship became impossible. Plaintiff said that he was not interested in purchasing defendants' shares of stock at the time, and defendants did not seem interested in purchasing his stock. However, defendant Milkon, who negotiated with plaintiff, testified that "Mr. Spiotta felt that he didn't want to step out; he would only step out if we all agreed to step out. I said that was perfectly okay with me, we would all be willing to sell to a disinterested responsible third party."
*351 In any event a settlement, culminating in the escrow agreement of November 7, 1958, was reached whereby a controlling stock interest in the bank was exposed for sale.
Under the agreement the parties placed a total of 28,000 shares of stock of the bank in escrow (70% of the outstanding shares) and directed the escrow holder to sell such shares as a unit to any responsible person offering not less than a stated price. The agreement then provided that "Any one or more of the parties shall have the right of first refusal to meet, within 15 days of such offer, any or every bona fide offer made for the stock." It is this clause which has generated the instant suit. As noted by the trial court in its opinion, one Silverman submitted an offer for the stock at the minimum price. (We find it unnecessary to consider defendants' argument that the Silverman offer was not a bona fide offer by a responsible person.) Thereafter the defendant Milkon, and then the plaintiff Spiotta, each attempted to exercise his "right of first refusal to meet" the Silverman offer. Confronted with such situation, counsel for the escrow holder interpreted the agreement to call for "a bidding procedure" with each new bid opening up a new 15-day period. Accordingly, defendant Milkon and plaintiff Spiotta attempted to outbid each other and submitted to the escrow holder a series of bids at gradually increased amounts.
Finally plaintiff field the instant suit seeking to enjoin further receipt of bids by the escrow holder. Plaintiff claimed that under the terms of the agreement there was only one 15-day period following the Silverman offer within which bids could be submitted, and that he had submitted the highest bid during such period. In addition to the restraint, the suit sought an interpretation of the escrow agreement as claimed by plaintiff, and specific performance thereof by awarding the 28,000 shares of stock to plaintiff as the successful bidder. As heretofore noted, the trial court found the escrow agreement was too indefinite and uncertain to be enforceable.
On this appeal plaintiff contends that the escrow agreement *352 is not indefinite and uncertain and that where more than one party indicated a willingness to purchase the stock, the escrow holder had the duty to sell such stock to the one submitting the highest bona fide bid. Plaintiff also argues that the provision that "Any one or more of the parties shall have the right of first refusal to meet, within 15 days of such offer, any or every bona fide offer made for the stock" means that the period for the submission of bids expired 15 days after the submission of the Silverman offer. In the alternative, plaintiff contends that should the escrow agreement not be construed as contemplating a bidding situation, then the escrowed stock should be divided equally between plaintiff and defendant Milkon, since each of them exercised his right to meet the Silverman offer.
We conclude that the ruling by the trial court was correct. Had only one of the parties to the escrow agreement exercised his right of first refusal to meet the Silverman offer, the terms of the escrow agreement might have been adequate. However, where as here, two parties attempted to exercise their right to meet the Silverman offer, a situation was presented which was neither anticipated nor provided for by the escrow agreement. Having the two parties bid against each other for the stock may have been an equitable way to resolve the difficulty, but it certainly was not called for by the agreement. So, too, with plaintiff's alternative suggestion that this court direct that the stock be divided equally between the two parties. Indeed the latter suggestion is directly opposed to the provision that the stock was to be sold as a unit. The whole purpose of the agreement was to end co-ownership of stock by the several parties.
The plain fact is that under the facts and circumstances that arose, the terms of the escrow agreement were inadequate to control.
The trial court in its opinion construed the right of first refusal set forth in the escrow agreement as enabling a party to deny or nullify a bid by an outsider, but as not entitling such party to require that the escrowed shares be sold to him. *353 70 N.J. Super., at pp. 352, 353. Since we find the escrow agreement to be indefinite, uncertain and inadequate in the particulars heretofore discussed and therefore unenforceable, it is unnecessary for us to pass upon the correctness of that part of the trial court's ruling.
Affirmed.